## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GUY FRANKLIN RANDALL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-04-1437-F** |
| | ) | |
| **RANDALL WORKMAN, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition and the relevant state court records (Record). Petitioner has filed a reply, and thus, the matter is at issue. For the reasons set forth below, it is recommended that the petition be denied.

## Background

Petitioner was charged with lewd molestation of his daughter, S.R., (Count One) and first degree rape of S.R. by instrumentation (Count Two) in the District Court of Stephens County, Case No. CF-2000-243. Petitioner, represented by counsel, waived his right to jury trial and after a bench trial he was convicted of lewd molestation and acquitted of the charge in Count Two. He was sentenced to twenty years imprisonment with five years suspended, a $1000.00 fine, and fees and costs. Petitioner appealed the conviction to the Oklahoma Court of Criminal Appeals (OCCA), raising the following claims which are presented as Grounds One through Three in the habeas petition: (1) the

hearsay testimony of S.R. was inconsistent and uncorroborated, rendering the evidence insufficient to support his conviction; (2) the trial court erred by imposing incarceration fees; and (3) his sentence was excessive.  Response, Ex. 1.  The OCCA affirmed Petitioner's conviction and sentence but vacated the sheriff's fees assessed against Petitioner and remanded for an evidentiary hearing on that issue.  Response, Ex. 3.

Petitioner subsequently filed a pro se application for post-conviction relief in which he asserted four claims, which are raised as Grounds Four through Seven in the petition: (1) Petitioner was physically/medically/mentally incompetent to be prosecuted/proceeded against; (2) he was denied effective assistance of trial counsel; (3) he was denied his right to confront and cross-examine the victim, S.R.; and (4) he was denied effective assistance of appellate counsel.  Petition at 2-3.  The state district court appointed counsel to represent Petitioner in the post-conviction proceeding, and following an evidentiary hearing, the district court denied relief.  Petition at 3.  Petitioner appealed the district court's decision on the claims raised in the post-conviction application and added the claim raised herein as Ground Eight – that the state district court's denial of his motion to "check out materials" (records and transcripts) for purposes of preparing his post-conviction claims violated his due process and equal protection rights.[1]  Response, Ex. 5 (Part 1).  In affirming the district court's denial of post-conviction relief, the OCCA found that Petitioner was procedurally barred from raising all the claims that he could have raised in his direct appeal, including his claim of ineffective assistance of trial counsel.  Response, Ex. 6. at 2.  The OCCA reviewed and

---

[1]Although this actually was the fifth proposition of error in support of his application for post-conviction relief, Petitioner mistakenly labeled this claim "Proposition VI."  Response, Ex. 5(Part 1) at 15.

rejected on the merits Petitioner's claims of ineffective assistance of appellate counsel. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Petitioner now seeks federal habeas relief, raising the eight issues he presented on direct appeal and in his state post-conviction action. Respondent admits that Petitioner has exhausted his state court remedies and that the petition is timely. Respondent contends that the OCCA's decision as to Petitioner's sufficiency of the evidence claim in Ground One is not contrary to or an unreasonable application of Supreme Court law. With respect to the second claim concerning incarceration fees, Respondent contends that Petitioner is not entitled to habeas relief because he fails to allege the violation of a constitutional right, because Petitioner received relief from the OCCA, and because the issue is not yet ripe for review. Respondent also contends that Petitioner's excessive sentence claim (Ground Three) is a matter of state law not subject to federal habeas review. Respondent contends that Petitioner has procedurally defaulted the claims raised in Grounds Four, Five and Six by failing to raise these claims on direct appeal, and Petitioner cannot show, either as cause for the default or as a substantive claim in Ground Seven, that appellate counsel was ineffective for failing to raise such issues on direct appeal. Finally, Respondent argues that Petitioner's claim in Ground Eight concerning the state court's denial of free access to his state court records fails to allege the violation of a federal constitutional right.

## **Standard Governing Petitions For Habeas Corpus**

For factual and legal matters that have been adjudicated on the merits in state court, this Court may grant a writ of habeas corpus relief only if that adjudication (1)

3

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding.  28 U.S.C. § 2254(d)(1) and (2).  A state court's decision is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  The "state court decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003)(per curiam ).  "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Id.* (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*)).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 133, 125 S.Ct. 1432, 1439 (2005); *Williams v. Taylor*, 529 U.S. at 407.  With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court case] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). Further, a state prisoner seeking habeas relief based on alleged erroneous factual determinations must

overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings.  *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

**Discussion**

**I.  Claims Raised on Direct Appeal**

    A.  Sufficiency of the Evidence

       In his first ground for habeas relief, Petitioner contends, as he did on direct appeal, that the hearsay statements of the victim, S.R., were inconsistent and contradictory and therefore corroboration  was required.  Petition at 5.  He asserts that although S.R. testified at trial, she failed to testify to any facts indicating that Petitioner had done anything wrong or criminal.  *Id.*  Therefore, the only evidence offered against him was the uncorroborated testimony of other witnesses as to S.R.'s hearsay statements, which evidence was insufficient to support his conviction for lewd molestation.  Petition at 6.

       When reviewing the sufficiency of the evidence raised in a habeas corpus petition, the Court inquires "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard reflects the "longstanding principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial." *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004).  Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).  The Court's review

under this standard is "'sharply limited' and a court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Wright v. West*, 505 U.S. 277, 296-97 (1992)).[2]

In rejecting Petitioner's sufficiency of the evidence claim on direct appeal, the OCCA found that "even though there was some conflict and confusion, S.R.'s hearsay statements detailing the specific acts were not so impeached or incredible as to require corroboration."   Response, Ex. 3 at 2 (unpaginated).   Further finding that S.R.'s statements were "somewhat corroborated by her brother," the Court found that there was sufficient evidence in the case to meet the test in *Spuehler v. State*, 709 P.2d 202, 203-04 (Okla. Crim. App. 1995).   *Id.*   In *Spuehler*, the OCCA set out the test for sufficiency of the evidence based on *Jackson v. Virginia*.   *See Valdez v. Gibson*, 219 F.3d 1222, 1238 (10th Cir. 2000) (recognizing that Oklahoma case law follows the *Jackson v. Virginia* standard for reviewing sufficiency of the evidence claims).   The question therefore is whether the OCCA's conclusion that the evidence was sufficient constituted an unreasonable application of *Jackson v. Virginia*.

In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime.   *Jackson*, 443 U.S. at 309, 324 n.16.

---

[2]The Tenth Circuit Court of Appeals has "not yet settled whether a challenge to the sufficiency of the evidence on a habeas petition is a question of fact or a question of law, and therefore whether 28 U.S.C. § 2254(d)(1) or § 2254(d)(2) should apply." *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir. 2006). In this case, as in *Hamilton*, Petitioner is not entitled to relief regardless of whether subsection (d)(1) or subsection (d)(2) is applied.

Under Oklahoma law, the offense of lewd molestation requires proof beyond a reasonable doubt of the following: (1) the defendant, being at least three years older than the victim; (2) knowingly and intentionally; ( 3) looked upon, touched or felt; (4) the body or private parts; (5) of any child under sixteen years of age; (6) in any lewd or lascivious manner. *See* Okla. Stat. tit. 21, § 1123(A)(2).  Victim testimony in lewd molestation cases requires corroboration only when the victim's testimony is so incredible or has been so thoroughly impeached as to be unworthy of belief.  *Applegate v. State*, 904 P.2d 130, 136 (Okla. Crim. App. 1995); *Jones v. State*, 765 P.2d 800, 802 (Okla. Crim. App. 1988); *Salyer v. State*, 761 P.2d 890, 895 (Okla. Crim. App. 1988).

Prior to trial, the trial court conducted an evidentiary hearing pursuant to Okla. Stat. tit. 12, § 2803.1[3] concerning the reliability of the unsworn out-of-court statements

---

[3]This statute operates as a specialized hearsay exception within the Oklahoma Evidence Code, and at the time of the hearing, provided that:

A. A statement made by a child who has not attained thirteen (13) years of age or a person who is an incapacitated person as such term is defined by the provisions of Section 10-103 of Title 43A of the Oklahoma Statutes, which describes any act of physical abuse against the child or incapacitated person or any act of sexual contact performed with or on the child or incapacitated person by another, is admissible in criminal and juvenile proceedings in the courts in this state if:
1. The court finds, in a hearing conducted outside the presence of the jury, that the time, content and totality of circumstances surrounding the taking of the statement provide sufficient indicia of reliability so as to render it inherently trustworthy. In determining such trustworthiness, the court may consider, among other things, the following factors: the spontaneity and consistent repetition of the statement, the mental state of the declarant, whether the terminology used is unexpected of a child of similar age or of an incapacitated person, and whether a lack of motive to fabricate exists; and
2. The child or incapacitated person either:
a. testifies or is available to testify at the proceedings or pursuant to the provisions of Section 753 et seq. of Title 22 of the Oklahoma Statutes, or
b. is unavailable as defined in Section 2804 of this title as a witness. When the child or incapacitated person is unavailable, such statement may be admitted only if there is corroborative evidence of the act.
Okla. Stat. tit. 12, § 2803.1 (Supp. 2000).

of the child victim, S.R., to Lara Davis, a child welfare specialist with the Department of Human Services (DHS); Kyle Boehm, a Duncan police officer; Donna Kinnison, a resident at the Elm Terrace Apartments in Duncan, Oklahoma, where Petitioner lived; and Roxie Sparks, an outpatient therapist with the Marie Detty Youth and Family Services. *See generally* Record, Transcript of Evidentiary Hearing held March 23, 2001. The trial court further ascertained that S.R., who was age five at the time the charged sexual offenses occurred, was available to testify at trial. *Id.* at 81-82. The record before this Court does not include the trial court's ruling nor the findings upon which such ruling was based; however, it is clear that the trial court found sufficient indicia of reliability as required by the statute because the hearsay statements were in fact admitted at trial, at which time the court reiterated his rational for finding the statements admissible. *See infra*. n. 6.

Petitioner did not challenge the admissibility of the child victim's hearsay statements on direct appeal, nor does he do so in this habeas action. Rather, Petitioner claims that the evidence was insufficient to sustain his conviction. In support of his sufficiency of the evidence claim, Petitioner argues that the hearsay testimony of S.R., as introduced through other witnesses, was not credible and was not adequately corroborated. As set forth below, there was ample evidence to support Petitioner's conviction of lewd molestation.

Stephens County DHS child welfare specialist Lara Davis testified at trial that her participation in the case began on June 28, 2000, when she received a referral based on a call initiated by Gina West, a leasing agent with the Elm Terrace apartments, who was concerned about possible sexual abuse. Trial Tr. vol 2 at 229-31. West, who was aware

that S.R. was the only young girl who lived in Petitioner's apartment, had reported that she was performing a monthly pest control and noticed a pair of little girl's underwear on the floor with what appeared to be blood in the crotch area. *Id.*; *see also* Trial Tr. vol. 1 at 52, 54-56.

Davis testified that she and Detective Kyle Boehm were initially unable to contact Petitioner, but they interviewed several Elm Terrace apartment residents, including Dana Pruitt, Donna Kinnison and Lisa Harper, who related to them specific instances of S.R.'s age-inappropriate sexual behavior and certain statements made by S.R.[4] Davis testified that she and Boehm made contact with Petitioner at his apartment on June 30, 2000, and he eventually agreed that they could interview his daughter, S.R., if the apartment manager was present. Trial Tr. vol. 2 at 232-33. S.R. accompanied the three adults to the apartment complex's community room, *id.* at 234, and Davis initiated an informal conversation with S.R., explaining that her job was to check on children and make sure everything was alright. *Id.* at 235-36. Then Davis began talking with S.R. about her

---

[4]These women also each testified at trial. Dana Pruitt, who lived at the Elm Terrace apartments, testified that she observed S.R. throw a toy car at her daughter's crotch area and Pruitt cautioned S.R. not to do that. Thereafter, the two girls were discussing crayons, and S.R. said "[D]addy sticks Crayolas in me." Trial Tr. vol. 1 at 63.

Lisa Harper, who had previously lived at the Elm Terrace apartments, testified that she stopped letting her daughter play with S.R. because of S.R.'s sexual behavior. Trial Tr. vol. 2 at 297. She observed S.R. "humping,"or thrusting her pelvic area, on a basketball and then she did the same thing to her daughter's backside. *Id.* at 298.

Another Elm Terrace apartment resident, Donna Kinnison, who had testified under oath and was subject to cross-examination at the March 23, 2001, § 2803.1 evidentiary hearing, was declared unavailable for trial due to hospitalization, and therefore her testimony from that pretrial proceeding was admitted into evidence as State's Exhibit 8. Trial Tr. vol. 2 at 303-05. Although the record before this Court does not include State's Exhibit 8, according to the transcript from the March 23, 2001, hearing, Kinnison testified that one day as she observed S.R. playing with other children, she heard S.R. ask a young girl if she wanted to see "what my daddy do to me," and S.R., holding a large crayon, then attempted to pull down the child's underwear to show her what her father did. Record, Transcript of Evidentiary Hearing held March 23, 2001, at 83-84. Kinnison also observed S.R. telling and demonstrating to a different child how her father held her on his lap, with his pants down. *Id.* at 84-85.

family members and established that S.R. knew the difference between the truth and a lie. *Id.* at 236-37. When Davis let S.R. know, without mentioning any specifics, that someone had indicated a "problem" with her father, S.R. would not talk about her father and became uncomfortable. *Id.* at 238-39. After about ten minutes, S.R. indicated that she needed to go to the bathroom, and Davis accompanied her and stood at the door. *Id.* at 239. While in the bathroom, S.R. spontaneously stated that her father "put crayons up her." *Id.* at 239-40. Davis asked where Petitioner placed the crayons and S.R. pointed to her vaginal area. *Id.* at 241. In response to Davis' question as to how often it happened, S.R. stated that it happened a lot. *Id.* When the two returned to the community room, Davis asked S.R. to repeat what she had just said, and S.R. again stated that her father put a crayon in her. *Id.* at 241-242. S.R. became reluctant to talk further in front of all three adults, so Davis invited S.R. to go with her to an adjacent room which had some toys, where S.R. spontaneously climbed up in Davis' lap, began bouncing up and down repeatedly, grabbed Davis' hands and placed them under S.R.'s armpits and stated that was where father puts his hands "when we have sex." *Id.* at 247. Davis asked whether S.R.'s clothes were on or off when that happened, and S.R. stated that her clothes were usually off and that her father's clothes were usually off also. *Id.* at 248-49. S.R. spontaneously described further details, stating that she had "sex" with her father a lot and that sometimes they were lying down and sometimes she was sitting in his lap. *Id.* at 250-51.[5] Davis asked S.R. whether having sex hurt; S.R. said no and stated she

---

[5]In response to Davis' question as to what sex was, S.R. described it as "humping, but with the wiener." Trial Tr. vol. 2 at 252. In response to Davis' question about "humping," S.R. crouched on the floor and demonstrated sexual pelvic motions. *Id.* at 252. When asked what her father said during these times,
(continued...)

preferred sitting in his lap because it tickled, pointing to her vagina area. *Id.* at 250. S.R. also told Davis that her father liked to "feel her up" and demonstrated by raising her shirt up and rubbing her hands all over her chest; she also stated that Petitioner liked to feel her "titties" especially after he got them cold. *Id.* at 253. When Davis asked how he got them cold, S.R. stated that he used the crayons to rub over her chest. *Id.* Davis testified that over 95 per cent of S.R.'s statements were not in response to questions, but were spontaneous, and that, according to her experience in interviewing children, S.R.'s knowledge of sexual activity appeared too advanced for a five-year-old to be aware of without having had individual experience. *Id.* at 260, 268.[6]

Roxie Sparks testified that S.R. was referred to her for counseling in late August 2000 by child welfare, and during the initial assessment session S.R. stated that her father touched her private parts with his "wiener." Trial Tr. vol. 1 at 130. Sparks testified that during the second session, in an exercise with anatomical dolls, S.R. immediately removed the clothes from the dolls representing her father and her brother and left clothing on the doll representing her mother, stating that her mother "didn't like to be messed with" so that was why she was "messed with." *Id.* at 136. Sparks further

---

[5](...continued)
S.R. said he didn't talk very much but he did tell her to go to the bathroom and wash off the white stuff that he sometimes got on her tummy. *Id.* at 254. S.R. also stated that she and her brother, also "humped" each other and that her dad watched them. *Id.* at 252.

[6]At the conclusion of Davis' trial testimony defense counsel acknowledged the trial court's previous ruling that her testimony was admissible but moved to strike Davis' testimony as hearsay. Trial Tr. vol.2 at 294. In denying the motion, the trial court found that S.R.'s statements to Davis, Kinnison and Pruitt appeared spontaneous and were consistent, at least prior to the videotape interview on July 13, 2000. *Id.* The court further found that while S.R.'s terminology was that of a five-year-old, she displayed more sexual knowledge than was normal for her age, that she was intelligent, and that there was no apparent motive for her to falsify her statements. *Id.* at 294-95. The court also found that while corroboration of Davis' testimony was not necessary since S.R. was available to testify, the descriptions of S.R.'s sexual behavior and knowledge corroborated the statements. *Id.* at 295.

testified that she developed a treatment plan that included establishing boundaries, based on S.R.'s sexual behavior during the session – sitting in Sparks' lap and straddling Sparks with her legs. *Id.* at 137. Sparks also testified that after S.R. left her lap, she began dancing and moving around, saying "oh baby, you know what I like." *Id.* at 138.

S.R., age six, testified at trial, and after the prosecutor established that she knew the difference between a truth and a lie, S.R. acknowledged that Petitioner was her father and had lived with her in the Elm Terrace apartments. Trial Tr. vol. 1 at 12-19. However, S.R. did not identify Petitioner or testify regarding any molestation by Petitioner. *Id.* at 19-20. Defense counsel asked no questions of S.R. on cross examination. S.R.'s brother, X.R. age nine, also testified, and after X.R. established his ability to discern the truth from a lie, he testified that he had seen S.R. and Petitioner together without any clothes on in S.R.'s bed. Trial Tr. vol. 1 at 23-24, 29-30. X.R. testified that Petitioner was on top of S.R. and that they were "having sex." *Id.* at 30-31. X.R. testified that he didn't know what sex meant but stated that Petitioner was "humping" S.R. – moving up and down. *Id.* at 32-33.

Kathleen Hattelid, a physician's assistant at Children's Hospital, testified that she examined S.R. and found her hymen was normal for a child of her age. Trial Tr. vol. 1 at 86. Hattelid also testified that her findings did not exclude sexual abuse because normal hymens are found in 80 percent of girls who have been sexually molested. *Id.* at 87-91.

Petitioner argues that "the only evidence offered at trial was the hearsay testimony of the DHS Social Worker" as to S.R.'s statements – which were "made in response to the

12

Social Worker's coaching."  Petition at 5.  He further suggests that such testimony was "put into question" because the initial interview session was not preserved for review – a practice subscribed to by his defense expert, Dr. Ray Hand.[7]  *Id.*  Petitioner points to no evidence indicating that S.R. was "coached" or subjected to suggestive interview techniques.  In fact, the record is to the contrary.[8]  Additionally, Petitioner does not argue that S.R.'s hearsay statements as provided by the testimony of Davis, Sparks and Kinnison should not have been admitted.  Instead, Petitioner appears to argue that in order for the evidence to be persuasive and therefore sufficient to sustain his conviction, such evidence should have been corroborated but was not.  However, corroboration is only required under Oklahoma law where the child victim's testimony appears incredible or has been impeached to the extent the testimony is unworthy of belief.  *Applegate*, 904 P.3d at 136.  Here, the OCCA found the hearsay testimony was reliable such that corroboration was unnecessary; in addition, the Court found some corroborative testimony was offered by S.R.'s brother.  Response, Ex. 3 at 2.  The undersigned finds that the OCCA's conclusion on the issue of corroboration is reasonable.  Moreover, Petitioner's claim that S.R.'s statements to other witnesses lacked credibility and were

---

[7]Dr. Hand, a psychologist licensed in Oklahoma, essentially discussed certain guidelines that he had written concerning effective and reliable interviews.  *Id.* at 180-191.  As part of that discussion, Dr. Hand noted that under certain circumstances, young child victims of alleged sexual offenses can be influenced by suggestive interview techniques and repetition of interviews, and that a failure to preserve an initial interview on videotape makes it more difficult to assess statements made by children.  Trial Tr. vol. 178-180.  As to the particular circumstances of Petitioner's case, Dr. Hand admitted he saw no overt attempt to manipulate S.R.'s interview but suggested that Davis could have provided more follow-up questions in response to some of S.R.'s statements and expressed concern that the initial interview was not videotaped. *Id.* at 191-220.

[8]A review of the testimony by DHS agent Davis shows that S.R.'s initial statements to Davis were spontaneous and that Davis's follow-up questions were open-ended and were not leading or suggestive. Trial Tr. vol. 2 at 234-282.

therefore insufficient to support a conviction amounts to a request to reweigh the evidence or second guess the credibility determinations of the finder of fact, an inappropriate function for this Court on federal habeas review.   Such credibility judgments are reserved to the fact finder and are not to be disturbed on federal habeas review.  *See Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (on federal habeas review of sufficiency of the evidence challenge the Court "may not weigh conflicting evidence or consider the credibility of witnesses"); *see also Applegate*, 904 P.2d at 136 (rejecting claim that a minor child's testimony required corroboration, as "it is the exclusive province of the jury to determine the weight of the evidence and the credibility of witnesses and to resolve conflicts therein") (citations omitted).

Viewing the evidence in the light most favorable to the State, as this Court is constrained to do, the undersigned finds that there was certainly sufficient evidence presented at trial for a reasonable factfinder to have found that Petitioner intentionally touched or felt the private parts of his daughter in a lewd and lascivious manner while she was under the age of sixteen.  *See Applegate*, 904 P.2d at 136-37 (holding testimony of nine-year-old victims who had given consistent accounts sufficient to convict the defendant of lewd molestation).  Therefore, the OCCA's decision with respect to this claim was not contrary to, or an unreasonable application of, the governing *Jackson* standard, and the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented at Petitioner's trial.  Petitioner is therefore not entitled to habeas relief on Ground One.

B. __Imposition of Incarceration Fees__

On direct appeal, Petitioner challenged the trial court's imposition of incarceration fees as violating state law because at sentencing the district attorney neither requested incarceration costs nor presented evidence of the actual costs of incarceration; he further argued that no determination was made as to whether the fees assessed would impose an undue hardship on Petitioner or his family.  Response, Ex. 1 at 11 (citing Okla. Stat. tit. 22, § 979a and *Honeycutt v. State*, 834 P.2d 993 (Okla. Crim. App. 1992))[9].  The OCCA pointed out that Oklahoma statutes authorized state district courts to assess costs of detention in a city or county jail.  Response, Ex. 3 at 2 (citing Okla. Stat. tit. 28, § 101 and Okla. Stat. tit. 22, § 979a(A)).  In considering Petitioner's state law claim, the OCCA found that the sentencing transcript and two documents filed in the district court as "Exhibit K" reflected "an adequate request on the part of the district attorney for incarceration fees." *Id.* at 3.[10]  However, the OCCA found that there was no evidence as to how the costs per day were calculated nor was there an itemization for medical expenses, as required by Oklahoma case law.  *Id.* (applying *Hubbard v. State*, 45 P.3d 96 (Okla. Crim. App. 2002)).  As a result, the OCCA vacated the "Sheriff's fees" as set forth in Exhibit K and remanded the matter to the district court for an evidentiary hearing to determine the basis of incarceration costs, noting that any hardship complaint "can be litigated after [Petitioner's] release and the costs are actually due and owing which is

---

[9]In *Honeycutt*, the OCCA set forth hearing requirements on the assessment of victim restitution in an analogous statute – such assessment is not involved in Petitioner's case.  *Honeycutt*, 834 P.2d at 1000.

[10]The OCCA further set forth the State's explanation that "Exhibit K is 'an exhibit which demonstrates the actual costs of incarceration and the defendant is required to sign the exhibit at the sentencing hearing.'" Response, Ex. 3 at 3.

what Exhibit K provides." *Id.* at 4.  The Court further noted that the Judgment and Sentence provided that upon release, Petitioner is to report to the state district court for a hearing to determine his ability to pay fines and costs.  *Id.* at 4 n.3.

In Ground Two of his habeas petition, Petitioner argues that even though the OCCA vacated the initial assessment of incarceration costs, the Stephens County District Court "did not review this error" during the evidentiary hearing held on his application for post-conviction relief.  Petition at 7.  He requests that this Court resolve the matter of whether Petitioner must pay the incarceration fees[11] and further argues that "[m]aking "Exhibit K" a part of the judgment and sentence is improper during a sentencing procedure and is a denial of due process."  *Id.*

Respondent contends that this issue fails to raise a claim which is cognizable on federal habeas review because this issue was decided in his favor on direct appeal, and that the failure to hold an evidentiary hearing prior to his release fails to raise a constitutional issue, and in any event the issue concerning actual costs of incarceration and Petitioner's indigent status is not ripe for review.  Response at 13-15.

It is clear that neither Petitioner's challenge on direct appeal nor the claim in Ground Two of his habeas petition raises a viable constitutional claim.  In rejecting Petitioner's claim regarding imposition of costs of incarceration, the OCCA relied on its own interpretation of state law.  Response, Ex. 3 at 2-4 (citing *Hubbard v. State*, 45 P.3d 96 (Okla. Crim. App. 2002) and Okla. Stat. tit. 22, § 979a (Supp. 1999)).  It is well established that the federal writ of habeas corpus reaches only convictions obtained in

---

[11]Petitioner alleges without evidentiary support that the incarceration costs amount to $6,378.00. Petition at 7.

violation of the United States Constitution, laws, or treaties.  *See Mabry v. Johnson*, 467 U.S. 504, 507(1984); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Phillips*, 455 U.S. 209, 221 (1982).  In this regard, the Supreme Court has stated that "[f]ederal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  *Smith*, 455 U.S. at 221.  Thus, on federal habeas review, this Court may not decide issues of purely state law.  *See Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002) ("On habeas review, [] the [state] courts' interpretation of the state . . . statute is a matter of state law binding on this court.").

Even if Petitioner had stated a valid constitutional claim, it would not entitle him to earlier or immediate release from confinement.  *See Wheeler v. Hannigan*, 37 Fed. Appx. 370, 2002 WL 432888, at *1 (10th Cir. Mar. 19, 2002)[12] (stating that the petitioner's challenge to a fine did not constitute a proper habeas claim because relief would not affect the duration of his confinement); *see also Taylor v. Hamlet*, 88 Fed. Appx. 220, 2004 WL 345672 (9th Cir. Feb. 24, 2004) (unpublished disposition) (upholding rejection of a petitioner's challenge to the imposition of restitution as "non-cognizable" in a 28 U.S.C. § 2254 petition).  Although Petitioner disagrees with the OCCA's interpretation of the applicable state law, he has failed to demonstrate that the OCCA's decision on this issue is contrary to or an unreasonable application of Supreme Court precedent. Petitioner is not entitled to habeas relief on Ground Two.[13]

---

[12]Unpublished dispositions are cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

[13]Petitioner makes the bald statement that his due process rights were somehow violated by making the sentencing transcript an exhibit to the Judgment and Sentence.  Petition at 7.  However, on direct appeal, Petitioner argued only that the assessment of incarceration costs, as set forth in Exhibit K, was a
(continued...)

## C.  Excessive Sentence

In Ground Three Petitioner contends his sentence of twenty years is excessive.  He contends that his sentence "should have been imposed in an impartial manner with proportionality considered."  Petition at 8.  According to Petitioner, his sentence was unduly harsh, particularly in light of the "weak evidence" of the crime itself and the fact that he had no prior felony convictions.  *Id.*

The Eighth Amendment requires that a sentence not be disproportionate to the severity of the crime or involve unnecessary infliction of pain.  *See Solem v. Helm*, 463 U.S. 277, 284 (1983).  On habeas review, federal courts must afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law.  *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) (citations omitted).  Under Oklahoma law, lewd molestation is punishable by imprisonment for one to twenty years.  *See* Okla. Stat. tit. 21, § 1123A(5) (Supp. 2000).  The OCCA found that the sentence was within the statutory limit and was not shockingly excessive in Petitioner's case.  Response, Ex. 3 at 2.

---

[13](...continued)

violation of state law.  Response, Ex. 1 at 10-12.  Therefore, any due process claim in this regard has not been exhausted as required by 28 U.S.C. § 2254(b)(1); nonetheless such claim should be denied on the merits.  28 U.S.C. § 2254(b)(2).  In *Honeycutt*, the OCCA rejected the argument that the assessment of incarceration costs violates due process because "the defendant has the opportunity to show why such costs should not be assessed against him in the first instance."  *Honeycutt*, 45 P.3d at 101 (citing *Bearden v. Georgia*, 461 U.S. 660, 672-73 (1983), for proposition that a defendant is constitutionally entitled to a hearing before detention for failure to pay fines and restitution).  Here, Petitioner 's conclusory assertion that his due process rights have been violated are wholly unsupported. In any event, Petitioner neither alleges nor demonstrates that incarceration costs have been assessed by the state district court nor has he alleged or shown that he has been denied an opportunity to show his inability to pay such costs following release from incarceration.  Therefore, Petitioner fails to show that his due process rights have been violated.

"Generally, [habeas] review of a sentence ends once [the court determines] the sentence is within the limitation set by statute." *Dennis*, 222 F.3d at 1258 (citation omitted). Here, Petitioner was sentenced in accordance with the permissible range provided for by Oklahoma law. The OCCA's determination of this issue is neither contrary to or an unreasonable application of controlling Supreme Court precedent. Therefore, Petitioner is not entitled to habeas relief in Ground Three.

## II. Claims Not Raised on Direct Appeal - Grounds Four, Five, Six and Seven

In Ground Four Petitioner alleges that he "was physically/medically/mentally incompetent to stand trial because of his diabetes. Petition at 9. In Ground Five Petitioner sets forth numerous allegations of ineffective assistance of trial counsel. Petition at 12-13. In his sixth ground for relief, Petitioner claims that his right to confront and cross-examine the victim, S.R., was violated. Petition at 14. Petitioner did not raise these claims on direct appeal but instead raised them for the first time in his application for post-conviction relief. In affirming the denial of post-conviction relief, the OCCA found these claims to be procedurally barred and, therefore, did not reach the merits. Response, Ex. 6. In Ground Seven Petitioner asserts ineffective assistance of appellate counsel as cause for his failure to raise these issues on appeal and as a substantive claim. Petition at 15-16. As previously noted, the OCCA rejected this claim on the merits in Petitioner's post-conviction action.

Respondent contends that federal habeas review of the claims raised in Grounds Four through Six are procedurally barred. Federal habeas courts generally do not address issues that have been defaulted in state court on an independent and adequate state

19

procedural ground, unless petitioner shows cause and prejudice or a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Demarest v. Price*, 130 F.3d 922, 941-42 (10th Cir. 1997). Oklahoma law generally dictates that any claims not raised on direct review are waived. Okla. Stat. tit. 22, §§ 1086. Here, it is not necessary to determine whether the claims in Grounds Four through Six are barred on independent and adequate state grounds.[14] Where an issue "may be more easily and succinctly affirmed on the merits," judicial economy counsels in favor of such a disposition. *Miller v. Mullin*, 354 F.3d 1288, 1297 (10th Cir. 2004) (quoting *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000)). On this basis, the claims in Grounds Four through Six will be addressed on the merits. Likewise, Petitioner's claim of ineffective assistance of appellate counsel is addressed on the merits.

A. <u>Competency to Stand Trial - Ground Four</u>

In Ground Four Petitioner alleges, as he did in his post-conviction application, that at the time of his arrest and subsequent prosecution he was an insulin dependent diabetic, and that during his pretrial incarceration he was given the wrong type of insulin and an inadequate diabetic diet, causing him to experience multiple bouts of hypoglycemia that resulted in a "[loss of] touch with reality, near comatose state and loss of cognitive

---

[14]In any event, it appears that Petitioner's claim in Ground Four, which the undersigned construes as a substantive competency claim, is not subject to procedural bar under Tenth Circuit precedent. *See Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (citing *Nguyen v. Reynolds*, 131 F.3d 1340, 1346 (10th Cir.1997)). Moreover, the OCCA did not explain whether it was affirming the district court's determination based on the merits of Petitioner's competency claim or because of procedural bar.

Additionally, it is easier to address the merits of Petitioner's ineffective assistance of trial counsel claim in Ground Five than to resolve the complexities of procedural default under *English v. Cody*,146 F.3d 1257 (10th Cir. 1998), as Petitioner argues that his counsel at trial and on appeal were employed by the same public defender office. Moreover, the undersigned cannot find with certainty that Petitioner's claims raised on post-conviction could have been resolved by the trial record alone.

functions/confusion." Petition at 9. Petitioner further alleges that while he was in jail he was developing end stage renal failure and gained nearly 50 pounds of water weight, resulting in a high level of toxins which deprived him of the "mental/cognitive ability to understand the nature of the charges brought against him and effectively and rationally assist in his defense against the said charges." *Id.* Additionally, Petitioner alleges that a narcotic pain medication he was taking at the jail adversely affected his mental alertness and normal functioning. *Id.* Petitioner contends that his medical condition, the poor medical treatment at the jail and the narcotic drugs affected his competency and that with proper treatment, he could have regained competency. *Id.* at 10. Petitioner acknowledges that a competency examination was conducted at the Stephens County jail; however, he alleges that he was not provided the assistance of a medical doctor or psychiatric specialist to assist in presenting multiple medical experts in a post-competency hearing. *Id.*

In light of Petitioner's primary allegation that he was actually incompetent during pretrial and trial proceedings, the undersigned has construed Petitioner's claim as a substantive competency claim, which is not subject to procedural bar on federal habeas review.[15] The test for competency to stand trial is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational

---

[15]"A competency claim by a criminal defendant may implicate both substantive and procedural due process." *Gilbert v. Mullin*, 302 F.3d 1166, 1178 (10th Cir. 2002). "'A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, . . . while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent.'" Id. (quoting *McGregor v. Gibson*, 248 F.3d 946, 952 (10th Cir. 2001) (*en banc*)). Although Respondent assumes that Petitioner has raised a procedural competency claim, it appears to the undersigned that Petitioner primarily raises a substantive due process claim.

understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotations omitted). *See also Drope v. Missouri*, 420 U.S. 162 (1975). Oklahoma has incorporated this test into its statutory definition of competency.[16] "[A] defendant lacks the requisite rational understanding if his mental condition precludes him from perceiving accurately, interpreting, and/or responding appropriately to the world around him." *Lafferty v. Cook*, 949 F.2d 1546, 1550 & n.2 (10th Cir. 1991). "[S]ufficient contact with reality" is thus the "touchstone for ascertaining the existence of a rational understanding." *Id.*

The record reflects that based on a pretrial application to determine competency, the state district court ordered that Petitioner's competency be evaluated.[17] Response, Ex 4, attached District Court of Stephens County "Dispositional Order," Case No. CF-00-243, dated September 28, 2004, at 3 (unpaginated); *see also* Response, Ex. 5 (Part 3) (Petitioner's Brief in Support for Post-Conviction Relief Application Appeal, "Attachments C," Stephens County District Court "Order for Evaluation to Determine Competency" (Ex. 11). Petitioner was evaluated at the Stephens County jail by Gordon Wilson, psychological assistant at the Jim Taliaferro Community Mental Health Center. O.R. 18,

---

[16]*See* Okla. Stat. tit. 22, § 1175.1 (defining "competency" as "the present ability of a person arrested for or charged with a crime to understand the nature of the charges and proceedings brought against him or her and to effectively and rationally assist in his or her defense").

[17]According to the State's response to Petitioner's application for post-conviction relief, "[t]he State sought the [competency] Evaluation out of an abundance of caution" as Petitioner "had overdosed on his insulin." Petition, attached Brief in Support of Motion for Summary Disposition, filed April 15, 2003, in the District Court of Stephens County, at 2 n.2 (unpaginated). At the evidentiary hearing held on Petitioner's post-conviction application, trial counsel testified that he requested Petitioner be examined for competency. *See* Hearing Transcript on Petitioner's Application for Post-Conviction Relief dated June 8, 2004 and July 22, 2004 (PC Tr.) at 11-12.

attached to the Response as Exhibit 12.  In a report issued on September 18, 2000, Wilson determined that Petitioner understood the nature of the charges against him.  *Id.*  In determining that Petitioner was able to consult with his lawyer and rationally assist in the preparation of his defense, Wilson found that Petitioner could give a detailed account of the events that led to his arrest and further found that Petitioner's diabetes condition "should not limit his ability to assist his lawyer as long as he is taking his insulin correctly."  *Id.*  On October 26, 2000, the trial court held a post-evaluation competency hearing and found Petitioner to be competent.  *Id.*  O.R. 19 and 20, attached to the Response as Exhibit 12.

In response to Petitioner's claim in his application for post-conviction relief that he was incompetent at the time of his arrest and throughout the trial proceedings due to hypoglycemia and renal failure, the district court held an evidentiary hearing on the matter.  *See generally* Transcript of Hearing on Defendant's Application for Post-Conviction Relief, held on June 8, 2004 and July 22, 2004.  Petitioner appeared with different counsel, and after hearing testimony on the issue of Petitioner's health problems, the district court determined that there was "little evidence to support a claim that he was incompetent during pre-trial and trial proceedings," based on the following specific findings:

> Trial counsel was well aware of Petitioner's health problems and had him examined for competency. Evidentiary Hearing Transcript, pg. 11. Counsel never felt that Petitioner was incompetent or unable to understand subsequent to that evaluation. Evid. Trans. pgs 20, 28. He saw no physical problems and did not notice any change of appearance of the Petitioner after the Post-Evaluation Competency Hearing and prior to Trial. Evid. Trans. pgs

13, 28.   Trial Counsel had a psychiatrist[18] examine Petitioner for Trial purposes and the doctor did not report any feeling or finding that Petitioner was incompetent.   Evid. Trans. pgs 20-21.

Physicians from the Oklahoma Department of Corrections noted that Petitioner's complaint of water retention and renal failure would not cause the problems he now complains of.   Evid. Trans. pgs. 64-65.   If there were an earlier problem, it would have been caused by hypoglycemia which is "episodic" in nature.   Evid. Trans. pgs. 41-42.   However, Petitioner advised the doctors that he had been taking his insulin during his time in jail which is the preferred procedure. Evid. Trans. pgs. 61-69.

At his initial prison examination, in May of 2001, Petitioner appeared coherent and without mental impairment.   Evid. Trans. pgs. 80, 81.   He had sufficient ability to consult with his doctor with a reasonable degree of rational understanding.   Evid. Trans. pgs. 87-88.

It is improbable that someone could have been in an hypoglycemic state from March to May, 2001, to the extent that he would not understand what was going on.   Evid. Trans. pg. 71.

Response, Ex. 4, attached District Court of Stephens County Dispositional Order, Case No. CF-00-243, dated September 28, 2004, at 3.   The district court denied post-conviction relief on this claim, concluding that Petitioner had failed to prove that he was incompetent at the time of his arrest and prosecution.   *Id.*   As previously noted, the OCCA affirmed the denial of post-conviction relief, holding that Petitioner had waived the competency issue by failing to raise it on direct appeal and that Petitioner's claim that appellate counsel was ineffective for failing to raise this issue among others was without merit.   Response, Ex. 6 at 2.

"Competency to stand trial is a factual question."   *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999) (citation omitted).   The state court's factual findings regarding the

---

[18]Respondent points out that Dr. Ray Hand was actually a psychologist who examined Petitioner before trial for purposes of his testimony as a defense expert.   Response at 34 (citing Trial Tr. vol.1 at 173-76).

competency determination are entitled to a presumption of correctness.  *Id.* (citing 28 U.S.C. § 2254(e)(1)).  *See also Rivera v. Beck*, No. 04-6317, 2005 WL 226249, at *2 (10th Cir. Feb. 1, 2005).  This presumption of correctness attaches to a state court's competency determination because such a determination "depends heavily on the trial court's appraisal of witness credibility and demeanor."  *Thompson v. Keohane*, 516 U.S. 99, 111 (1995).  To establish a right to federal habeas relief, Petitioner must rebut this presumption of correctness by clear and convincing evidence.  *Bryson*, 187 F.3d at 1201.

Here, while it is clear that Petitioner experienced diabetes-related medical issues prior to trial, he has failed to rebut with clear and convincing evidence the factual findings of the state district court.  Other than a copy of a deposition taken in connection with a civil rights action Petitioner filed in this Court, Petitioner has provided no evidence beyond that provided to the state district court during his post-conviction proceeding regarding the impact of his illness on his competency to proceed to trial.  *Compare*, Response, Ex. 5 (Parts 2 and 3) and Petition, attached exhibits.[19]  Upon review of the record, including Petitioner's documentary evidence, the undersigned finds that Petitioner has failed to rebut the state court's finding of competence.

Petitioner has failed to show that he was unable to understand the charges against him or that he was unable to assist in his defense and consequently, he fails to create a

---

[19]The deposition was taken in connection with a civil rights action Petitioner filed in this Court, *Randall v. Board of County Commissioners of the County of Stephens County, et al.*, Case No. CIV-03-727-F, wherein Petitioner alleged that he was subjected to unconstitutional conditions of confinement and that Defendants were deliberately indifferent to the medical treatment he needed for his Type I diabetes disease during his stay in the Stephens County Jail from July 29, 2000, until his transfer to a prison facility on May 29, 2001, following his conviction.  The district court granted summary judgment to the various defendants on May 18, 2005, and Petitioner filed an appeal which is pending in the Tenth Circuit.

real, substantial and legitimate doubt as to his competency to stand trial.  *Walker v. Attorney General for the State of Oklahoma*, 167 F.3d 1339, 1347 (10th Cir. 1999).  *See also Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir. 1995) ("Petitioner's history of mental problems, low intelligence, psychotropic medication, and substance abuse do not establish that he was incompetent to plea.").  Therefore, Petitioner has failed to establish entitlement to federal habeas relief with respect to the claim that he was actually incompetent to proceed to trial and accordingly, Ground Four should be denied.[20]

B. Ineffective Assistance of Trial Counsel - Ground Five

In Ground Five Petitioner sets forth numerous allegations of ineffective assistance of counsel.  Petitioner's allegations may be summarized as follows: counsel failed to adequately investigate Petitioner's case, failed to investigate the state of Petitioner's mental and physical health or his social status, failed to adequately explain the consequences of waiving jury trial, failed to confront or cross-examine the State's witnesses, failed to attend the interview sessions of S.R., and failed to have such sessions videotaped.  Petition at 12-13.  Petitioner also alleges that defense counsel abandoned his adversarial role by allowing

---

[20]To the extent Petitioner also attempts to raise a procedural competency claim by claiming that the procedure provided by the state was inadequate because the competency evaluation was conducted by a psychological assistant rather than a qualified forensic examiner as described in the relevant state statute, such claim, even if procedurally barred, *Barnett*, 174 F.3d at 1133, can be denied on the merits.  "A competency claim based upon procedural due process involves a defendant's constitutional right, once a bona fide doubt has been raised as to competency, to an adequate state procedure to insure that he is in fact competent to stand trial."  *Barnett*, 174 F.3d at 1133-34 (citing *Walker*, 167 F.3d at 1345).  Accordingly, in order to obtain habeas relief on a procedural competency claim, a petitioner must show that the trial court ignored evidence that, when viewed objectively, raises a bona fide doubt as to his competency to stand trial.  *Walker*, 167 F.3d at 1344-45.  Petitioner wholly fails to allege or show that the psychological assistant was not authorized under Okla. Stat. tit. 22, § 1175.1(4), to conduct the competency examination or that the psychological assistant lacked the training or experience to enable him to form an opinion regarding Petitioner's competency.  Nor does Petitioner allege that an unconstitutional burden of proof was employed at the post-examination competency hearing held on October 24, 2000.  Thus, the undersigned finds that Petitioner fails to raise a bona fide doubt as to his competency to stand trial on April 2, 2001, and any procedural competency claim must fail.

the admission of the videotape of S.R., in violation of his Sixth Amendment right to confrontation.[21]   Reply at 4.

To establish ineffective assistance of trial counsel, Petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Further, trial counsel's performance is evaluated from the attorney's perspective at the time of the assistance, and considered in light of all the circumstances prevailing at that time with a strong presumption that counsel's conduct fell within the "wide range of professional assistance." *Strickland*, 466 U.S. at 689.  Counsel's performance must have been completely unreasonable, not merely wrong. *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997).  In assessing prejudice, the Court looks at the totality of the evidence, not just the evidence helpful to the petitioner. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).  The performance and prejudice prongs of *Strickland* may be addressed in any order and need not both be addressed if Petitioner fails to make a showing of one. *Id.*  In the end, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Petitioner bears the burden of alleging facts which, if proved, would entitle him to relief. *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995). "[H]is allegations must be specific

---

[21]Although Petitioner did not set forth this particular claim of ineffective assistance of counsel claim in his petition, he has included this claim in his reply to the response, and he raised the factual basis of such claim in his post-conviction proceeding.  Response, Ex. 5(Part 1) at 9.  Therefore, the undersigned has reviewed this additional claim of ineffective assistance on the merits.

and particularized; '[c]onclusory allegations will not suffice to warrant a hearing.'" *Id.* (citation omitted).

<u>Failure to Investigate</u>

First, Petitioner alleges generally that trial counsel did not adequately prepare for trial. In support of this claim, Petitioner alleges that trial counsel met with Petitioner only two to three times prior to trial with each meeting lasting ten or fifteen minutes, that Petitioner "did not get to convey who defense witnesses may have been, discuss the case or have the opportunity to discuss any defense strategy." Petition at 12. He further contends that counsel failed to investigate Petitioner's health, mental and/or social status and failed to investigate or obtain any witnesses for mitigation purposes during his sentencing proceeding. *Id.* at 12-13.

Petitioner fails to provide any specific evidence to support his claim that trial counsel was inadequately prepared for trial. His conclusory and unsupported claim in this regard is insufficient to support a claim of ineffective assistance of trial counsel. *See Thomas v. Gibson*, 218 F.3d 1213, 1224 (10th Cir. 2000) (petitioner's "three-sentence [ineffective assistance of counsel] argument which fail[ed] to cite, let alone apply the controlling framework from *Strickland* . . . , is so superficially developed that this court deems it waived"); *James v. Cody*, No. 96-6170, 1996 WL 536522 at *1 (10th Cir. Sept. 23, 1996) (conclusory allegation without articulated facts failed to support claim that trial or appellate counsel's performance fell below an objective standard of reasonableness or that their representation prejudiced him in any way). *See also Kleba v. McGinnis*, 796 F.2d 947, 954 (7th Cir. 1986) ("We know of no case establishing a minimum number of meetings

28

between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel."). Counsel is "strongly presumed to have rendered adequate assistance," *Strickland*, 466 U.S. at 690, and Petitioner's conclusory claim of inadequate preparation fails to overcome this presumption. Petitioner does not state how counsel's alleged failure to communicate with him rendered counsel's performance constitutionally deficient, or how more preparation or investigation would have affected the outcome of the trial. Thus, Petitioner's unsupported claim that counsel failed to adequately investigate and prepare his case does not warrant habeas corpus relief.

Waiver of Jury Trial

Petitioner also alleges that his trial counsel was constitutionally ineffective for advising him to waive his right to be tried by a jury. Petition at 13. Petitioner claims that he was "tricked" him into waiving a jury trial because counsel told Petitioner that the trial judge "was going to find petitioner not guilty on all charges and there was no need for a jury." *Id.*

The right to a jury trial is fundamental. *See Duncan v. State of Louisiana*, 391 U. S. 145, 149 (1968). However, "in the exercise of a free and intelligent choice, and with the considered approval of the court, [a criminal defendant] may waive trial by jury . . . ." *Adams v. United States*, 317 U. S. 269, 275 (1942). The waiver must be "knowing, intelligent, and voluntary." *United States v. Robertson*, 45 F.3d 1423, 1431 (10th Cir. 1995). The Supreme Court has explained that a waiver is "knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances-even though the defendant may not know the

specific detailed consequences of invoking it." *United States v. Ruis*, 536 U.S. 622, 629-30 (2002).  Even if a criminal defendant "lack[s] a full and complete appreciation of all of the consequences flowing from his [Sixth Amendment] waiver, it does not defeat the State's showing that the information provided to him satisfied the constitutional minimum." *Patterson v. Illinois*, 487 U.S. 285, 294 (1988) (quotation omitted).

Here, the record shows that Petitioner intelligently waived his right to a jury trial. At the beginning of trial, Petitioner appeared with counsel before the court and the trial judge explained to Petitioner that he had the right to have twelve of his peers determine whether the State met its burden of proof of proving his guilt beyond a reasonable doubt, and further, that Petitioner could request that the jury set his punishment if found guilty. Trial Tr. vol 1 at 7.  The trial court also explained that the State would have the same burden of proof in a non-jury trial, and Petitioner indicated that he understood these rights.  *Id.*  In response to the court's questions, Petitioner indicated on the record that he was waiving his right to a jury trial as a free and voluntary act and that no one had threatened him or promised him anything.  *Id.* at 8.

At the evidentiary hearing on Petitioner's application for post-conviction relief, Petitioner's trial counsel, Don Gutteridge, testified in response to Petitioner's claim that counsel had induced him into waiving a jury trial that as was his policy, he had explained to Petitioner the advantages and disadvantages of having a jury trial or a non-jury trial. Transcript of Hearing on Defendant's Application for Post-Conviction Relief, held on June 8, 2004 and July 22, 2004, at 9-10.  Mr. Gutteridge also testified that in his experience, a case involving alleged sexual abuse of a child  was difficult to try to a jury.  *Id.* at 10, 25.

30

Counsel testified that it was his opinion that if the hearsay statements were admitted at trial, there "wasn't much, as I recall, to rebut those statements." *Id.* at 26. Counsel further testified that ultimately, the decision to waive jury trial was Petitioner's, that he saw no indication that Petitioner not competent to make that decision, and that if he had seen any evidence of incompetence, he would not have allowed Petitioner to waive his right to a jury trial. *Id.* at 23-24.

"An attorney's decision to waive his client's right to a jury is a classic example of a strategic trial judgment, 'the type of act for which *Strickland* requires that judicial scrutiny be highly deferential.'" *Hatch*, 58 F.3d at 1459 (quoting *Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir. 1989)). Here, counsel was concerned about the nature of the charges, and the trial court had ruled after a § 2803.1 hearing that S.R.'s hearsay statements concerning the acts Petitioner committed against her, as testified to by several witnesses, would be admitted into evidence. Thus, it was a reasonable strategic decision to advise Petitioner to waive his right to a jury trial and try the case to the judge. Moreover, as discussed in Ground Four, Petitioner has failed to rebut the trial court's finding that he was competent to proceed to trial, and he has presented no evidence to undermine the validity of the representations he made when he appeared in open court with his counsel and waived his right to a trial by jury. Thus, the undersigned finds that counsel's actions were reasonable and did not violate the *Strickland* standard.

Failure to Confront Witnesses

Petitioner claims trial counsel "failed to confront or cross-examine the State's witnesses" and failed to attend the interview sessions of his daughter, S.R. Petition at 13.

He further suggests that counsel should have had such sessions videotaped. *Id.* In his reply, Petitioner also claims that defense counsel abandoned his adversarial role "by offering and allowing the videotape of the children into evidence when the State could not have offered such evidence." Petitioner's Reply at 4.

Petitioner offers no authority in support of his claim that counsel was ineffective because he failed to failed to attend certain interviews conducted with S.R., prior to the filing of criminal charges. Such claim is clearly without merit. Likewise, his claim based on counsel's failure to attend the therapy sessions Roxie Sparks conducted with S.R. beginning late August 2000 is without merit. In any event, the record shows that counsel thoroughly cross-examined Davis and Sparks as to their questioning techniques and as to the statements made by S.R. to these witnesses. Trial Tr. vol. 1 at 140-154; Trial Tr. vol. 2 at 261-274. With respect to his claim that counsel should have had these interviews and therapy sessions videotaped, Petitioner fails to show any prejudice. Moreover, Petitioner acknowledges that at least one interview of S.R. by DHS worker Davis was videotaped. In fact, Petitioner asserts that counsel was ineffective for introducing into evidence the videotape of the interview Davis conducted with S.R. on July 13, 2000. Thus, Petitioner fails to show that he was deprived of effective counsel in this regard.

Although Petitioner claims that counsel failed to confront and cross-examine the State's witnesses, Petitioner does not identify such witnesses. Nonetheless, the record shows that counsel thoroughly cross-examined DHS agent Davis as to the circumstances surrounding her questioning and interview of S.R. during the investigation stage. Additionally, counsel effectively questioned therapist Sparks as to the methodology used

32

during her counseling and treatment sessions with S.R., including her questioning techniques when eliciting information from S.R.  Counsel also cross-examined the various neighbor witnesses called by the State as to their observations of S.R.'s behavior and/or her interaction with other children.  The Tenth Circuit has concluded that "how best to cross-examine and/or attempt to impeach witnesses, what evidence to introduce, [and] what defense theory will be most plausible . . . involve challenges to trial strategy and tactics."  *Boyd v. Ward*, 179 F.3d 904, 917 (10th Cir. 1999); *see also Pickens v. Gibson*, 206 F.3d 988, 1002 (10th Cir. Mar. 14, 2000) (affirming denial of habeas relief on ineffective assistance of counsel claims because "[t]rial strategy includes determining how best to cross-examine witnesses").  Petitioner fails to show that counsel rendered ineffective assistance on this basis.

The remaining claim of ineffective assistance is based on counsel's decision to introduce into evidence the videotape of DHS agent Davis' interview with S.R. on July 13, 2000.  In presenting its case in chief, the State presented the testimony of Davis, Sparks and Boehm with respect to statements made to them by S.R. as to the sexual acts Petitioner committed, as well as the testimony of apartment resident Kinnison.  Thus, in its case in chief, the State presented substantial evidence of Petitioner's guilt of lewd molestation.  In defense, Dr. Ray Hand, a psychologist, testified generally as to his opinion with respect to preferred techniques in questioning child victims of sexual offenses.  Additionally, defense counsel offered and the Court admitted into evidence as Defendant's

Exhibit 3, the videotaped interview between Davis and S.R.[22]  Trial Tr. vol. 2 at 307.  The videotape, which is included in the record before this Court, reveals that at the time of the July 13 interview, S.R. was uncomfortable about the presence of Detective Boehm but after he left the room, she made some statements about Petitioner placing a crayon on her "titties" and under her panties and "feel[ing] [her] up."  However, S.R. was restless during much of the interview and her answers to questions posed by Davis became evasive and either imaginative or unresponsive to Davis' questions.  Therefore, trial counsel's decision to introduce the videotape into evidence was a reasonable strategic decision because the videotape somewhat undermined the State's evidence of S.R.'s consistent statements.  He fails to explain how the introduction of the videotape was prejudicial to him.  Thus, Petitioner's claim in this regard fails to overcome the presumption that counsel's tactical decision to offer the videotape was reasonable and professional.

In sum, Petitioner has failed to establish that his trial counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by counsel's alleged shortcomings.  *Strickland*, 466 U.S. at 687.  Accordingly, having considered the merits of these claims and for the reasons discussed above, the undersigned recommends that habeas corpus relief be denied on Petitioner's ineffective assistance of trial counsel claims.

---

[22]In discussing the issue, the State advised that the state appellate court had held that it was unconstitutional "to offer into evidence videotaped statements of these children in cases such as this." Trial Tr. vol. 2 at 308.  Further, the State argued that if the videotape were admitted into evidence, X.R.'s interview should be held part of that admission for the trial court's viewing.  *Id.*  The court allowed admission of the videotape only as to S.R.'s taped interview.  *Id.*

C. <u>Right to Confrontation - Ground Six</u>

In Ground Six Petitioner alleges that he was "denied his right to confrontation and cross-examination of the witness against him." Petition at 14. Petitioner's claim in this regard is not altogether clear, as his allegations seem to conflate a variety of legal theories. Petitioner appears to assert that the videotaped testimony of his daughter, S.R. was admitted in violation of certain procedures required by state law. Petition at 14 (citing Okla. Stat. tit. 22, § 753 and Okla. Stat. tit. 10, § 7003-4.3). Petitioner also alleges that "[n]o hearing was held to determine the competency of the witness, cross-examination was not allowed, no videotape was used after 10 or more sessions wherein the witnesses testimony was obtained and overly influenced by the questions and those proferring the questions . . . ." *Id.* Petitioner once again alleges that trial counsel did not attend the multiple interviews of S.R. and the sessions were not videotaped. *Id.* Finally, Petitioner states that his Sixth Amendment rights were violated "much like the case in *Crawford v. Washington*, 541 U.S. [36 (2004)]." *Id.*

The undersigned initially notes that Petitioner's claim that certain procedures required by state law were not followed in admitting the videotape does not state a cognizable claim for habeas relief. As discussed above, state law error itself does not support federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In any event, the state statutory authority on which Petitioner relies is inapplicable to the

admission of child hearsay statements in a case such as this involving a sexual offense when the child is available and present at trial.[23]

To the extent Petitioner alleges a denial of his right to confront the victim, S.R., because his own counsel offered a videotape of one of her interviews into evidence, his claim fails. The Sixth Amendment's Confrontation Clause, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. At the time of Petitioner's trial, the Supreme Court law relating to the interplay between rights under the Confrontation Clause and admission of hearsay evidence involving a child victim was found in *Ohio v. Roberts*, 448 U.S. 56 (1980) and *White v. Illinois*, 502 U.S. 346 (1992).[24] The Supreme Court instructed that the Clause

---

[23]The first statute cited by Petitioner, Okla. Stat. tit. 22, § 753, authorizes, under certain restricted conditions, the taking of the testimony of a child by closed-circuit television during trial, or through a pre-trial audiovisual recording of the child's testimony for later viewing in the courtroom during trial, after following certain procedural requirements for the authentication of the recording and after affording each party an opportunity to view the record prior to its being shown in the courtroom and furnishing a written transcript of the record to the parties. Okla. Stat. tit. 22, § 753 (repealed by the Oklahoma legislature in 2003). However, the special procedure under § 753 applies to situations in which the child will not appear in the courtroom. *See Young v. Macy*, 21 P.3d 44 (2001). Here, S.R. was available to testify and did appear at trial, making the procedural requirements of § 753 inapplicable.

Petitioner also cites a statute from the Oklahoma Children's Code which concerns the taking of testimony of a child only "in a proceeding affecting the parent-child, guardian-child or family relationship in which a child twelve years or younger is alleged to have been abused." Okla. Stat. tit. 10, § 7003-4.3(A) (Supp. 1995). This statute authorizes the trial court under certain circumstances to order the testimony of a child in such proceeding to be taken by closed circuit television or by video deposition, Okla. Stat. tit. 10 § 7003-4.3(B), (C), or "as otherwise authorized by law for the protection of child witnesses." Okla. Stat. tit. 10, § 7003-4.1(B). It is plain that the procedures in such statutes are inapplicable to Petitioner's criminal proceeding.

[24]Although Petitioner cites *Crawford v. Washington*, 541 U.S. 36 (2004), he fails to articulate how this case impacts his claim in Ground Six. Petition at 14. In *Crawford*, the Supreme Court held that the admission of the out of court testimonial statement of an accomplice which was not subjected to cross-examination, violated the Confrontation Clause of the Sixth Amendment. *Crawford*, 541 U.S. at 53-54. Moreover, the Supreme Court decided *Crawford* over seventeen months after Petitioner's conviction became final, and therefore, the holding in *Crawford* can have no effect on Petitioner's case unless that holding has retroactive application to cases on collateral review. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). The
(continued...)

operates in two ways when determining the admissibility of hearsay statements. *Ohio v. Roberts*, 448 U.S. 56 (1980). First, the Sixth Amendment establishes a rule of necessity-- the prosecution must either produce the declarant of a statement it wishes to use against the defendant, or demonstrate the unavailability of the declarant. *Id.* at 72. Second, once the witness is shown to be unavailable, the statement is admissible only if it bears an adequate indicia of reliability. *Id.* at 65. In *White*, the Supreme Court addressed the confrontation issue in the context of a criminal case involving charges of sexual assault of a child and held that the Confrontation Clause did not require proof of the unavailability for trial of the four-year-old sexual-abuse victim in order to properly admit her hearsay statements. *White*, 502 U.S. at 353. In so holding, the Supreme Court recognized that "*Roberts* contains language that might suggest that the Confrontation Clause generally requires that a declarant be produced at trial or be found unavailable before [her] out-of-court statement may be admitted into evidence." *Id.* The Supreme Court concluded, however, that such a reading was too expansive and that "*Roberts* [instead] stands for the proposition that unavailability analysis is a necessary part of the

---

[24](...continued)
Tenth Circuit has held that although *Crawford* "announces a new rule of constitutional law," it "is not a watershed decision and is, therefore, not retroactively applicable to initial habeas petition[s]." *Brown v. Uphoff*, 381 F.3d 1219, 1226-27 (2004), *cert. denied*, *Brown v. Lampert*, 125 S.Ct. 940 (2005).

Except for the Ninth Circuit, all other circuits which have considered this question have also concluded that *Crawford* does not apply retroactively. See *Lave v. Dretke*, 444 F.3d 333 (5th Cir.2006), *Mungo v. Duncan*, 393 F.3d 327, 336 (2d Cir.2004), *cert. denied, Mungo v. Greene*, 544 U.S. 1002 (2005); *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005); *Murillo v. Frank*, 402 F.3d 786, 790 (7th Cir. 2005); *Bintz v. Bertrand*, 403 F.3d 859, 867 (7th Cir. 2005), *cert. denied*, 126 S.Ct. 174 (2005); *Evans v. Luebbers*, 371 F.3d 438, 444-45 (8th Cir. 2004). A divided panel of the Ninth Circuit held in *Bockting v. Bayer*, 399 F.3d 1010 (9th Cir. 2005), that the *Crawford* rule should apply retroactively on collateral review. The United States Supreme Court granted certiorari sub nom on May 15, 2006 in *Whorton v. Bockting*, 2006 WL 1310697, (U,S. May 15, 2006) (No. 05-595).

Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding." *Id.* at 354.

As previously stated, at the § 2803.1 hearing to determine the admissibility of S.R.'s hearsay statements, it was established that S.R. was available to testify at trial and there was no question raised as to her competence to testify. The record of Petitioner's trial reflects that S.R., age six at the time of trial, was the first witness called to testify. Trial Tr. vol. 1 at 12. Although the prosecutor was able to establish that she knew the difference between the truth and a lie, S.R. did not testify as to the acts of sexual conduct Petitioner committed. At the close of the prosecutor's questioning, Petitioner had an opportunity to  cross-examine S.R. regarding the events that formed the basis of the hearsay testimony Petitioner challenges.   Although S.R.'s testimony at trial was limited, Petitioner raised no objection to her availability or competency to testify. Furthermore, the record demonstrates that the statements of S.R. as testified to by DHS agent Davis, Detective Boehm and therapist Sparks were consistent in all material aspects with her testimony in the videotape regarding the molestation by the Petitioner. Under these circumstances, the admission of the videotape interview by his counsel did not deny Petitioner his right to confront S.R. *See Nelson v. O'Neill*, 402 U.S. 622, 626-27 (1971) ("'where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of [the declarant's] out-of-court statements does not creative a confrontation problem'") (quoting *California v. Green*, 399 U.S. 149, 162 (1970)). *See also United States v. NB*, 59 F.3d 771, 775 (8th Cir. 1995) ("The [Confrontation] Clause is satisfied when the hearsay declarants,

here the alleged child victims, actually appear in court and testify in person") (quoted citation omitted).

Petitioner has failed to show that he is entitled to habeas relief on the basis of his claims in Ground Six.

D.   Ineffective Assistance of Appellate Counsel - Ground Seven

In Ground Seven Petitioner alleges, as he did in his post-conviction proceeding, that  appellate counsel rendered ineffective assistance by failing to raise the issues Petitioner presented in his application for post-conviction relief, specifically, Petitioner's competency to proceed to trial, the ineffective assistance of trial counsel and a violation of Petitioner's right to confrontation.   Petition at 15.   As set forth below, the claims Petitioner contends appellate counsel should have raised are meritless and therefore, appellate counsel did not render deficient performance.

The standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) applies equally to ineffective assistance claim concerning trial and appellate counsel.   *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 2002).   Petitioner must "establish that appellate counsel was 'objectively unreasonable' in failing to assert [a] claim on direct appeal, and that there is a reasonable probability that, but for counsel's failure to raise the issue, [the petitioner] would have prevailed in challenging his . . . conviction [ ] on direct appeal." *Hain v. Gibson*, 287 F.3d 1224, 1231 (10th Cir. 2002).   Application of *Strickland* to an ineffective assistance of appellate counsel claim requires the Court to "look to the merits of the omitted issue."   *Id.*   Unless there is a reasonable probability that the omitted claim would have resulted in Petitioner obtaining relief on appeal, there is no ineffective

assistance of appellate counsel under the Sixth Amendment.  *Neill v. Gibson*, 278 F.3d 1044, 1057 n. 5 (10th Cir. 2001).[25]

The OCCA has already addressed Petitioner's claim of ineffective assistance of appellate counsel on the merits, relying on *Strickland*.  Response, Ex. 6 at 2.  Therefore, this Court's review is confined to the question of whether that decision was contrary to or involved an unreasonable application of *Strickland*.  28 U.S.C. § 2254(d)(1); *see also Turrentine v. Mullin*, 390 F.3d 1181, 1202 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 2544 (2005).  For the reasons set forth below, the undersigned finds that there is no reasonable probability that inclusion of the omitted claims would have resulted in Petitioner obtaining relief on direct appeal.  Thus, the OCCA's decision that there was nothing in the record indicating that Petitioner's representation on direct appeal was deficient was neither contrary to nor an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).

Petitioner first alleges that appellate counsel should have raised the competency issue on direct appeal.  According to Petitioner, if counsel had adequately reviewed the record with respect to this issue, "it would have been clear Petitioner was not mentally/physically/medically competent to proceeding to trial," that his competency evaluation was not conducted by a qualified official and that he was not afforded access to competent psychiatric experts in preparing for the post-competency examination.

---

[25]Petitioner's reference to the omitted competency issue as a "dead-bang winner" is not the applicable standard for a claim of ineffective assistance of appellate counsel.  Petition at 16.  Rather, the Tenth Circuit has made it clear that the standard involves a "reasonable probability" of reversal.  *See Neill*, 278 F.3d at 1057 n.5 ("The en banc court, therefore, expressly disavows the use of the 'dead-bang winner' language to imply requiring a showing more onerous than a reasonable probability that the omitted claim would have resulted in a reversal on appeal.").

Petition at 16.  Having reviewed the merits of Petitioner's substantive competency claim in Ground Four and having determined such claim to be without merit, the undersigned finds therefore that Petitioner fails to demonstrate that a challenge to his competency raised on appeal would have been successful.  Accordingly, it was not unreasonable for appellate counsel to omit such claim from the direct appeal, and  counsel was not ineffective for failing to challenge Petitioner's competency to stand trial.

Petitioner also raises ineffective assistance of appellate counsel based upon counsel's failure to raise ineffective assistance of trial counsel.  Petition at 16.  The merits of Petitioner's claims regarding trial counsel's alleged deficiencies were addressed *supra* in the discussion regarding Ground Five.

The undersigned found that Petitioner failed to show that he was prejudiced by any alleged inadequacies of trial counsel.  Accordingly, a claim of ineffective assistance of trial counsel would not have been meritorious on appeal.

Petitioner includes an allegation that appellate counsel suffered shared an impermissible conflict of interest because both he and trial counsel were allegedly appointed to represent Petition by the Oklahoma Indigent Defense System (OIDS). Petition at 16. While the Sixth Amendment right to counsel includes the right to representation free from conflicts of interest, *see Wood v. Georgia*, 450 U.S. 261, 271 (1981), conclusory and unsupported allegations, such as those Petitioner offers, fall far short of satisfying the controlling performance-and-prejudice test set out in *Strickland*.  *Stafford v. Saffle*, 34 F.3d 1557, 1564-65 (10th Cir. 1994).  Here, Petitioner has not presented any evidence that any conflict existed which prevented appellate counsel from providing effective assistance.

Supported only by a bare allegation of conflict, this claim is without merit. *See Smallwood v. Gibson*, 191 F.3d 1257, 1270 (10th Cir. 1999) (habeas petitioner failed to show ineffective assistance of counsel based on fact that trial and appellate counsel both worked for Oklahoma City Public Defender's Office); *Berget v. Gibson*, No. 98-6381, 1999 WL 586986, at *13 (10th Cir. Aug. 5, 1999) (rejecting unsubstantiated conflict of interest claim where both trial and appellate counsel worked for Oklahoma County Public Defender's Office); *Thomas v. Cowley*, No. 92-6267, 1993 WL 220607, at *4 (10th Cir. June 22, 1993) (finding no conflict of interest inherent in fact that habeas petitioner's trial and appellate counsel worked in same public defender's office and appellate counsel failed to raise ineffective assistance of trial counsel claim).  Further, the undersigned has already addressed the fact that the claims omitted on appeal are without merit, including Petitioner's proposed ineffective assistance of trial counsel claims.  Therefore, Petitioner fails to show that appellate counsel rendered ineffective assistance due to a conflict of interest.[26]

Although Petitioner has also indicated that appellate counsel was ineffective for failing to include a claim that he was denied his right to confrontation, he makes no argument in Ground Seven as to how the omission of this claim prejudiced him.  In any event, Petitioner's right to confrontation claim has been addressed on the merits in

---

[26]To the extent Petitioner also alleges that a conflict of interest resulted in a denial of effective counsel at the post-conviction evidentiary hearing because his appointed counsel worked in the same office as his trial counsel, such claim fails.  "'There is no constitutional right to an attorney in state post-conviction proceedings.'" *Smallwood v. Gibson*, 191 F.3d 1257, 1267 n. 4 (10th Cir.1999) (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)).

connection with Ground Six and has been found to be without merit.   Thus, appellate counsel cannot be found to be ineffective for failing to raise this issue on direct appeal.

In summary, Petitioner has not demonstrated that his appellate counsel's failure to raise the claims in Grounds Four, Five and Six was constitutionally deficient or prejudicial under *Strickland v. Washington*, 466 U.S. at 687.   Further, Petitioner has failed to show that appellate counsel's representation was deficient or prejudicial in any other aspect.   Therefore, the OCCA's rejection of Petitioner's claim of ineffective assistance of appellate counsel was not contrary to, or an unreasonable application of, clearly established Supreme Court jurisprudence, and Petitioner is not entitled to habeas relief on the basis of ineffective assistance of appellate counsel.

## IV.  Free Copy of Transcripts - Ground Eight

In his appeal of the state district court's denial of post-conviction relief, Petitioner alleged for the first time that the trial court erred in rejecting his request to "check out materials," specifically, the state court "records and transcripts," in order to pursue post-conviction relief.   Response, Ex. B, at 1-2. (citing *Tiger v. State*, 859 P.2d 1117(Okla. Crim. App. 1993)).   The OCCA's order affirming the denial of post-conviction relief does not reflect that the Court addressed this claim.   Response, Ex. 6.   In Ground Eight of his petition, Petitioner asserts the same claim in this Court, alleging that the records and transcripts have been previously prepared at State expense and he is "being denied due process and equal protection under the law in that the district court denied Petitioner's motion to check out materials."   Petition at 17.   Petitioner contends that the Oklahoma

43

courts "have taken the stand the petitioner although indigent cannot obtain these records without paying the full cost to have [them] re-produced . . . ." *Id.*[27]

Petitioner does not cite any federal authority in support of this claim.  Habeas corpus relief is only available on grounds that a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."); *see also Shipley v. Oklahoma*, 313 F.3d 1249, 1251 (10th Cir. 2002) ("[F]ederal habeas review does not extend to the correction of purely state law procedural errors that do not rise to the level of a constitutional due process violation . . .").  Thus, to the extent Petitioner is asking this Court to directly review the ruling made by the state courts concerning access to a copy of his state court transcripts, he misapprehends the purpose of a federal habeas corpus action and the power of this Court over decisions of a state court.  Federal courts do not sit as "super appellate" courts to reconsider state court decisions.  *Robinson v. State of Oklahoma*, 404 F. Supp. 1168, 1170 (W.D. Okla. 19751) ("Habeas corpus in the federal court does not serve as an additional appeal from state court conviction.").  In addition, it is well established that errors in a state's post- conviction procedure are generally not cognizable in a federal habeas action.  *See Phillips v. Ferguson*, 182 F.3d 769, 772-73 (10th Cir. 1999).

---

[27]Petitioner does not claim that he was denied a transcript necessary to prepare his defense at the second trial, or to appeal his conviction. *See generally Britt v. North Carolina*, 404 U.S. 226 (1971).

To the extent Petitioner alleges that he has been prevented from thoroughly raising his claims in this federal habeas corpus action, such claim is without merit. *See* Petition at 17 ("Petitioner has been denied the basic tools to perfect this collateral appeal.").  In this habeas action, Petitioner has articulated the basis of his habeas claims, and Respondent has attached to the Response the cited portions of the transcript and all other exhibits relied upon in the Response.  Petitioner has been served with the Response and attached exhibits and has filed a reply in which he addresses Respondent's arguments.  Petitioner has not made a colorable showing of need for the state court records.

In sum, the undersigned finds that the issue of whether the state courts erred in denying Petitioner's request to obtain or "check out" his state court records with no further expense fails to state a cognizable claim for habeas relief, and Petitioner has failed to show that he has been prejudiced by the lack of such records in presenting his federal habeas corpus claims.  According, Ground Eight of the petition should be denied.

**RECOMMENDATION**

For these reasons, it is the recommendation of the undersigned Magistrate Judge that the petition for writ of habeas corpus be denied.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by the 29th day of June, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).  This Report and

Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 9th day of June, 2006.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE